**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARNELLA M. RIDEOUT, MARY E.** | : | |
| **SAMPLE, ANGELA B. WALTERS,** | : | |
| **TYNESA S. MATHIS, CHARMARIE** | : | |
| **HOCKENBERRY, AND DAWN C.** | : | |
| **CRIDER,** | : | |
| **Plaintiffs** | : | |
| | : | **Civil Action No. 1:09-cv-0403** |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **PUBLIC OPINION; MEDIANEWS** | : | |
| **GROUP, INC., d/b/a MEDIA NEWS** | : | |
| **GROUP, TNP PUBLISHING, LLC, THE** | : | |
| **TEXAS-NEW MEXICO NEWSPAPERS** | : | |
| **PARTNERSHIP, RON CLAUSEN, and** | : | |
| **GEORGE FULLER,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Defendants' motion to dismiss (Doc. No. 14) brought pursuant to

Federal Rule of Civil Procedure 12(b)(6). Among the arguments made in the motion to dismiss

is an argument that Plaintiffs failed to complete the administrative exhaustion requirements in

good faith. To properly consider this issue, the Court will look beyond the face of the complaint

and entertain the motion as one for summary judgment. <u>See</u> Fed. R. Civ. P. 12(d). The Court

provided notice to the parties at the telephone conference held June 29, 2010, that the

administrative exhaustion argument would be considered as if an argument for summary

judgment. (Doc. No. 42.) For the reasons stated more fully herein, Defendants' motion will be

granted in part and denied in part.

**I. BACKGROUND**

Plaintiffs Darnella Rideout, Becky Sample, Angela Walters, Tynesa Mathis, Charmarie

Hockenberry, and Dawn Crider were employees of the Chambersburg newspaper known as the Public Opinion. The paper was bought by a partnership between Defendant Media News Group ("MNG") and Defendant Gannett Publishing Company ("Gannett") in December 2005. (Doc. No. 1 ¶¶ 12-13.) Defendants TNP Publishing ("TNP") and Texas-New Mexico Newspapers Partnership are wholly-owned subsidiaries of MNG and Gannett, respectively, that participate in the partnership-ownership of the Public Opinion.

In January 2006, shortly after MNG and Gannett's takeover of the newspaper, Defendant Ron Clausen was promoted to the position of Publisher of the Public Opinion. (Doc. No. 1 ¶ 18.) Clausen, in turn, promoted Defendant George Fuller to the position of Circulation Director. (Id. ¶¶ 20-21.) Fuller had no substantive experience in circulation, and Clausen made the decision to promote Fuller without interviewing any female candidates for the position, including Plaintiff Rideout, who was qualified for the position of Circulation Director. (Id. ¶¶ 20-21, 36-38.) Clausen promoted Fuller knowing that Fuller had previously referred to a female employee as a "cunt." (Id. ¶ 46.) As Publisher, Clausen denied women and older workers sick leave, FMLA leave, and promotions. (Id. ¶ 71.) At one point, he inquired why two female employees would even be considered for promotion when they were pregnant or had used maternity leave. (Id. ¶¶ 71-73.)

As Circulation Director, Fuller had supervisory power over Plaintiffs Mathis, Hockenberry, Crider, and Sample. (Id. ¶¶ 79.) Plaintiffs allege that Fuller consistently spoke to female employees in a demeaning manner or ignored them completely, retaliated against those who complained about mistreatment, made sexual comments, refused to hire one female applicant due to her "size," and referred to them using derogatory words such as "cunt" to create

2

an intimidating atmosphere.  (Id. ¶¶ 46, 52-55.)  Fuller also limited and monitored female

employees' smoke breaks in ways male employees' breaks were not monitored.  (Id. ¶ 67.)

Women were not considered for promotion or vacancies.  (Id. ¶ 84.)  Due to the hostile

atmosphere they experienced, Crider resigned in November 2006; Hockenberry resigned in

December 2006; and Mathis resigned in February 2007.  (Id. ¶¶ 80-82.)

Although the newspaper had a policy in place regarding complaints of harassment, the

policy involved reporting the complaints to Human Resources Liaison Angela Walters, who then

would report the complaints directly to Clausen.  (Id. ¶¶ 26, 30.)  Plaintiff Walters alleges that

she received numerous complaints about the hostile work environment created by Fuller.

(Id. ¶ 31.)  She would pass the complaints on to Clausen, only to see that no corrective action

was taken.  (Id. ¶ 32.)  Rather than act to remedy or investigate the complaints, Clausen would

allow reprisals against the complainants to occur.  (Id. ¶ 28.)

In one instance, Plaintiff Sample alleges that she was singled out for harassment by

Fuller because she was a female supervisor of an all-female group of employees in the

Circulation Department and was refused pay for her overtime work.  (Id. ¶¶ 41, 45-46.)  When

Sample was denied reprieve from Clausen, she and Walters attempted to go above his head to the

MNG office in Denver.  (Id. ¶ 56.)  Though MNG promised to conduct a confidential

investigation, within days of the complaint, the Circulation Department was restructured, Sample

was removed of her supervisory duties, and it was widely known that Sample had complained.

(Id. ¶¶ 57-64.)  Sample was denied incentives she had previously earned.  (Id. ¶ 66.)  Sample was

also denied other employment perks, such as cell phone reimbursement.  (Id. ¶ 69.)  She resigned

under constructive discharge from her position in February 2007.  (Id. ¶ 77.)  Walters also

resigned or was constructively discharged at that time.  (Id. ¶ 75.)

On July 3, 2007, Plaintiffs filed a collective complaint with the Pennsylvania Human Relations Commission ("PHRC") alleging violations of the Pennsylvania Human Relations Act ("PHRA") and Title VII.  (Doc. No. 46-2.)  The administrative complaint was "dual filed" with the Equal Employment Opportunity Commission ("EEOC").  (Id.)  Defendants filed a motion to dismiss or in the alternative a motion for clarification.  On April 29, 2008, the PHRC denied Defendants motion to dismiss and ordered Plaintiffs to file amended individual complaints.  (Doc. No. 15-2, Ex. B.)  Plaintiffs failed to file amended complaints and on October 28, 2008, the PHRC initiated failure to cooperate proceedings against Plaintiffs and advised that if Plaintiffs continued to fail to file their individual amended complaints, the case would be processed for administrative closure for failure to cooperate.  (Id., Ex. D.)  On December 16, 2008, Plaintiffs filed individual amended complaints.  (Doc. Nos. 46-3, 46-4, 46-5, 46-6, 46-7, 46-8.)  Defendants again moved to dismiss for lack of legal sufficiency on December 25, 2008, (Doc. No. 15-2, Ex. F.), and Defendants filed a supplement to that motion on January 5, 2009, (Id., Ex. G).  The PHRC never ruled on Defendants' motion to dismiss, and on March 4, 2009, Plaintiffs filed a complaint with this Court.  (Doc. No. 1.)

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir.

1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient

information to outline the elements of his claim or to permit inferences to be drawn that those

elements exist."  Kost, 1 F.3d at 183 (citations omitted).  A court, however, "need not credit a

complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse

v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).  Indeed, the Supreme Court

has recently held that while the 12(b)(6) standard does not require "detailed factual allegations,"

there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual

allegations must be enough to raise a right to relief above the speculative level.'"  Phillips v.

County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient

factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578

F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

　　　　Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if

the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  A factual dispute is material if it might affect the outcome of the

suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that

would allow a reasonable fact finder to return a verdict for the nonmoving party.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether

the evidence presents a sufficient disagreement to require submission to the jury or whether it is

so one-sided that one party must prevail as a matter of law.  Id. at 251-52.  In making this

determination, the Court must "consider all evidence in the light most favorable to the party

opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the nonmoving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

III. DISCUSSION

Initially, the Court notes Plaintiffs' complaint is somewhat ambiguous in that the complaint appears to conflate multiple claims in each count. That is, no count clearly states what claim is being raised. Rather, the counts simply cite a statute in a heading, with limited explanation. For example, each odd numbered count of the complaint begins "Title VII

Discrimination, Hostile Work Environment, and Retaliation." Further, each even numbered count of the complaint begins "PHRA." Defendants do not specifically address whether this method of pleading satisfies Twombly, 550 U.S. 544, and Iqbal, 129 S. Ct. 1937. Nor do Defendants request a more definite statement. Therefore, rather than addressing these issues sua sponte, the Court will construe the complaint as raising gender discrimination, hostile work environment, and retaliation claims under Title VII in each odd numbered count of the complaint. The Court will further construe the complaint as raising gender discrimination, hostile work environment, and retaliation claims under the PHRA in each even numbered count of the complaint.

Defendants first ask the Court to dismiss the complaint in its entirety because Plaintiffs have failed to exhaust their administrative remedies. Specifically, Defendants maintain that, although Plaintiffs filed claims with the PHRC and EEOC, they did not comply with the administrative proceedings in good faith, which constitutes a failure to exhaust their administrative remedies.[1] In the alternative, Defendants raise a number of additional grounds in their motion to dismiss, namely that: (1) Plaintiff Rideout's failure to promote claims under Title VII and the PHRA are barred by the administrative statute of limitations; (2) Plaintiff Hockenberry and Plaintiff Crider's PHRA claims are barred by the administrative statute of limitations; (3) Plaintiff Sample is the only Plaintiff to have sufficiently alleged a retaliation claim under Title VII and the PHRA; (4) Defendants Clausen and Fuller cannot be held

---

[1] Because this argument requires an assessment of matters beyond the pleadings, the Court will assess the argument as one for summary judgment. See Fed. R. Civ. P. 12(d); see also Robinson v. Dalton, 107 F.3d 1018, 1021-22 (3d Cir. 1997) (finding Title VII exhaustion requirement is not jurisdictional, but rather, is subject to equitable considerations, and therefore is usually reserved for summary judgment).

individually liable under Title VII because they are not "employers" as that definition is intended in 42 U.S.C. § 2000(e)(b); (5) Plaintiffs' ADEA and age discrimination claims are insufficient; and (6) Plaintiffs' class action claims must be dismissed.  The Court will consider these matters in turn.

###    A.    Failure to Exhaust PHRA Administrative Remedies

The PHRA makes it unlawful for an employer to discriminate against an employee on the basis of sex.  43 P.S. § 955(a).  The Act further provides that the right to be free from sex discrimination in the employment context is "a civil right which <u>shall</u> be enforceable as set forth in this act."  43 P.S. § 953 (emphasis added).  To seek relief under the PHRA, the aggrieved party must file a complaint with the PHRC.  43 P.S. § 959(a).  After the complaint has been filed, the PHRC is to make a prompt investigation of the allegations contained therein.  43 P.S. § 959(b)(1).  Within thirty days of docketing the complaint, the PHRC is to serve the named respondent and the respondent is given thirty days to file an answer.  43 P.S. § 959(b)(2)-(3).  If within one year of filing the complaint with the PHRC, the PHRC dismisses the complaint or fails to resolve the claim, the PHRC must notify the complainant.  43 P.S. § 962(c)(1).  Upon receipt of such notice, the complainant "shall be able to bring an action in the courts of common pleas of the Commonwealth."  <u>Id.</u>

In creating the PHRC, "the Legislature recognized that only an administrative agency with broad remedial powers, exercising particular expertise, could cope effectively with the pervasive problem of unlawful discrimination.  Accordingly, the Legislature vested in the Commission, quite properly, maximum flexibility to remedy and hopefully eradicate the 'evils' of discrimination."  <u>PHRA v. Alto-Reste Park Cemetery Assoc.</u>, 306 A.2d 881, 887 (Pa. 1973)

(citing 43 P.S. § 952(a)). To ensure that the PHRC is able to effectuate this purpose, the

Supreme Court of Pennsylvania has held that the procedures set forth in the act for resolving

such claims are the "mandatory rather than discretionary means of enforcing the right" created

by the PHRA. Clay v. Advanced Computer Applications, 559 A.2d 917, 919 (Pa. 1989). As

such, the Act gives the PHRC "exclusive jurisdiction of a complaint alleging violations under the

PHRA for a period of one year," and the complainant may not bring suit in court until he or she

exhausts such remedies. Id. at 920 (quoting Lukus v. Westinghouse Electric Corp., 419 A.2d

431, 454-55 (Pa. Super. Ct. 1980)).

In the case at bar, Defendants do not argue that Plaintiffs failed to file a complaint with

the PHRC. Nor can they, because Plaintiffs did file such a complaint. Defendants do not argue

that Plaintiffs failed to allow one year to pass between the time of their filing an administrative

complaint and the filing of a complaint with this Court. Nor can they, because Plaintiffs's

PHRA complaint was pending nearly two years before they filed a complaint with this Court.

And Defendants do not argue that Plaintiffs did not receive a right to sue letter from the PHRC

before filing a complaint. Nor can they, because each Plaintiff received such a letter. Rather,

the gravamen of Defendants' claim regarding Plaintiffs' exhaustion of their administrative

remedies is the assertion that the Plaintiffs insufficiently pursued their administrative complaints

by (1) failing to pursue their claims in good faith; (2) failing to file their complaints in a timely

manner; and (3) failing to properly invoke the procedures of the PHRC.

### 1. *Plaintiffs' Good Faith in Pursuing Relief at the PHRC*

In support of their contention that Plaintiffs' claim must be dismissed for failure to

exhaust "in good faith," Defendants rely on a series of cases, all of which are readily

distinguishable from the present action. (Doc. No. 15 at 16-18.) In one set of cases, Defendants rely on decisions in which the courts limit their holdings regarding good faith exhaustion to the failure to cooperate with EEOC investigations of Title VII claims.[2] Of course, the present action involves a PHRC proceeding and not an EEOC proceeding. In a second set of cases, the PHRA claims are dismissed for failure to pursue administrative relief in good faith; however, each of these involved suits filed in court without right to sue letters.[3] Here, Plaintiffs received right to sue letters from the PHRC. (Doc. No. 46-11.) The Court finds this distinction significant because under the PHRA, unlike Title VII, claimants need not obtain a "right to sue" letter before seeking relief in court. Lukus v. Westinghouse Electric Corp., 419 A.2d 431, 453-54 (Pa. Super. Ct. 1980) (finding the "right to sue" letter expands the rights of victim to provide an "unconditional right to seek redress in court"). As such, it is logical that Pennsylvania would require plaintiffs to have pursued their administrative proceedings in good faith when no "right to sue" letter has issued to ensure that the administrative proceedings have in fact resolved

---

[2] Wood v. Central Parking Systems of Pennsylvania, Inc., Doc. No. 99-3022, 2000 WL 873310, *4 (E.D.Pa. June 23, 2000) (dismissing for failure to cooperate with the EEOC and not discussing PHRA claims); McLaughlin v. State System of Higher Education, Doc. No. 97-1144, 1999 WL 239408, *2 (E.D.Pa. March 31, 1999) (dismissing Title VII claim for failure to cooperate and dismissing PHRA claim for failure to file a verified complaint); Mackay v. United States Postal Service, 607 F. Supp. 271, 275-76 (E.D. Pa. 1985) (finding plaintiff failed to exhaust his remedies before the EEOC because his administrative complaint lacked specificity and he failed to supplement the information).

[3] Kozlowski v. Extendicare Health Services, Inc., Doc. No. 99-4338, 2000 U.S. Dist. LEXIS 1493 (E.D. Pa. Feb. 17, 2000) (dismissing the PHRA claim because Plaintiff filed suit in court just five months after filing her administrative complaint); Lukus v. Westinghouse Electric Corp., 419 A.2d 431, 454-55 (Pa. Super. Ct. 1980) (finding plaintiff did not exhaust the PHRC's administrative procedures where Plaintiff withdrew his PHRC complaint to pursue relief at the EEOC); Schweitzer v. Rockwell Int'l, 586 A.2d 383, 387 (Pa. Super. Ct. 1990) (dismissing claim for failure to exhaust PHRC proceedings in good faith where plaintiff requested her claim be transferred to the EEOC nine months after her PHRA claim was filed).

themselves in some way, or that further proceedings would be futile.

However, this Court holds that where, as here, the PHRC has issued a "right to sue" letter, the Commission has placed its imprimatur on a plaintiff's subsequent suit in court.  See, e.g., Ruberg v. Outdoor World Corp., No. 4:05-cv-1520, 2005 U.S. Dist. LEXIS 31581, *13 (M.D. Pa. Nov. 28, 2005) (concluding the PHRC's right to sue letter had the effect of relinquishing the PHRC's exclusive jurisdiction).  This holding is consistent with language of the PHRA, which states, without exception, that plaintiffs "shall be able to bring an action" in court after the issuance of a right to sue letter.  43 P.S. § 962(c)(1).  The Pennsylvania Superior Court has likewise found that victims have "the unconditional right to seek redress in court" following the issuance of the right to sue letter.  Lukus, 419 A.2d at 453-54 (emphasis added).

The Court is cognizant of the concern that this result may undermine the effectiveness of the PHRC review process, as it invites plaintiffs, after filing a complaint, to thereafter fail to actively participate in the administrative process.  However, the cure for this ill is not for a federal court to rewrite Pennsylvania laws.  Rather, the solution is for the Pennsylvania Legislature to amend the PHRA to add an exception, or for the PHRC to more assiduously police the complaints filed before it by dismissing complaints or commencing failure to cooperate proceedings before issuing "right to sue" notices.  Therefore, in light of the plain language of the PHRA and the Legislature's guidance in construction of its text,[4] the Court finds that Plaintiffs did not fail to exhaust their administrative remedies based on Defendants' contention that

---

[4] The PHRA states that the provisions of the act "shall be construed liberally for the accomplishment of the purposes thereof."  43 P.S. § 962(a).  Because the PHRA was enacted to combat the "evils" associated with discrimination on the basis of employment and housing discrimination, 43 P.S. § 952(a)-(b), the Court believes that the PHRA requires that ambiguity be resolved in favor of claims proceeding.

Plaintiffs did not exhaust in good faith.[5]

### 2. Timeliness of PHRC Complaint

Defendants, relying on <u>Murphy v. Commonwealth</u>, 486 A.2d 388 (Pa. 1985), next argue that because Plaintiffs were ordered to clarify their initial administrative complaint the initial complaint should be deemed a "nullity." (Doc. No. 15 at 14-15.) Under Defendants' theory, because the initial complaint is a nullity, the amended complaint cannot relate back to that complaint, and therefore the amended complaints were not filed within the 180-day statute of limitations. (Doc. No. 15 at 15.) Plaintiffs attempt to distinguish <u>Murphy</u>, emphasizing that the complaint in <u>Murphy</u> was filed by the PHRC rather than an individual complainant. (Doc. No. 20 at 13-14.)

Ultimately, the Court agrees with Plaintiffs, although not for the reasons Plaintiffs articulate. The Court disagrees with Defendants' characterization of the PHRC's order. (Doc. No. 15-2, Ex. B.) Although Defendants construe the order as evidence that the order must be dismissed for lack of legal sufficiency, rendering the complaint a "nullity," the order does not

---

[5] Although this Court holds that Plaintiffs need not show they pursued their PHRA claim in good faith, the Court finds summary judgment would not be appropriate on this issue even if good faith were required. Although the evidence demonstrates that Plaintiffs' initial complaint was deemed vague and in need of clarification at the administrative stage by Motions Commissioner Raquel Otero de Yiengst, (<u>see</u> Doc. No. 15-2, Ex. B, 21-25), there is no unequivocal evidence of bad faith. The Court cannot conclude that, as a matter of law, Plaintiffs engaged in bad faith during the PHRC proceedings without making determinations of fact, a task which must be left for the fact finder. Although Defendants have raised arguments that could lead a fact finder to conclude that Plaintiffs did not follow the administrative procedures of the PHRC in a good-faith attempt to reconcile their claims, (<u>see</u> Doc. No. 15-2 at 37), a fact-finder may find that Plaintiffs' delay was due to simple inadvertence, negligence, or incompetence on the part of an attorney, or an intent to circumvent administrative remedies in favor of litigation. Therefore, even if the Court found that good faith was required, Defendants' motion for summary judgment on Plaintiffs' PHRA claims would be denied on this basis.

grant this requested relief.  (Id.)  Rather, the PHRC simply orders Plaintiffs to file an amended

complaint to clarify the claims.  (Id.)  The PHRC's regulations specifically provide for such

amendments to "clarify or amplify allegations" made in the original complaint or to cure

technical defects.  16 Pa. Code § 42.35(b).  There is no reason to believe that an amended

complaint would render the original complaint "a nullity."  After all, the new complaint could

not properly be called an "amended complaint" if the Court were required to construe it as

produced ex nihilo.  The complaint filed here is, therefore, distinct from the complaint filed in

Murphy in that the PHRC ruled that the initial complaint filed was insufficiently pleaded.

Murphy, 486 A.2d at 391.  Because the PHRC made no such finding here and Defendants make

no clear argument that the amended complaint does not relate back to the original complaint, 16

Pa. Code § 42.35, the Court concludes the amended complaints were timely filed.

### 3.    Invocation of PHRC Procedures

Finally, Defendants argue Plaintiffs did not invoke the procedures of the PHRC and

therefore their claims must be foreclosed.[6]  (Doc. 15 at 11-14.)  Defendants ground this argument

_____

[6] The Court notes that Defendants base their argument, in part, on a deductive fallacy.
Defendants argue:

> The PHRA formulates [its] exhaustion requirement by stating, "if a
> complainant invokes the procedures set forth in this act, that
> individual's right of action in the courts of the Commonwealth shall
> not be foreclosed." . . . .  Written another way, an individual's right
> of action shall be foreclosed if he or she does not invoke the
> procedures set forth in the PHRA.

(Doc. No. 15 at 11 (emphasis in original).)  Defendants attempt to create a proof by
contraposition; however, they miss the mark.  To put their argument in other terms, Defendants
argue "if you are a dog, then you are a mammal; therefore, if you are not a dog, then you are not
a mammal."  A proper proof by contraposition of Defendants' premises would be, "if you invoke
the procedure, then your right of action in the courts shall not be foreclosed; therefore, if your

in their belief that Plaintiffs' complaint and amended complaints were "insufficiently specific." (Id. at 12.) The Court observes that Defendants have produced no cases, and this Court is able to find none, wherein a claim was dismissed for failure to invoke the procedures of the PHRC because, as here, Plaintiffs were ordered by the PHRC to amend their administrative complaint. Indeed, the amendment process, which Plaintiffs completed, is part of the PHRC's procedures. 43 P.S. § 959(a); 16 Pa. Code § 42.35.

Likewise, Defendants' claim that the amended complaints were so grossly insufficient that they constitute a failure to invoke the PHRC's procedures must fail as well. Although the Court agrees these complaints are not perfect, the Court cannot find them so deficient as to hold that Plaintiff did not invoke the procedures of the PHRC. In short, Plaintiffs' compliance with the PHRC process was certainly does not warrant praise. However, Defendants provide no basis for concluding that this Court should find that Plaintiffs failed to invoke the PHRC's procedures because Defendants were unsatisfied[7] with Plaintiffs' individual amended complaints. Therefore, this argument must fail.

### B.        Failure to Exhaust Title VII Administrative Remedies

Defendants also move for summary judgment on Plaintiffs' Title VII claims for Plaintiffs' alleged failure to exhaust their administrative remedies. Defendants' motion on this issue must fail as well. Initially, the Court notes that there is a split of authority on whether plaintiffs must show that they have exhausted their administrative remedies even in cases where

_____

right of action is foreclosed, then you did not invoke the procedure."

[7] As has been noted, the PHRC never ruled on the merits of Defendants second motion to dismiss the administrative complaint.

the EEOC has issued a right to sue notice.  See Melincoff v. East Norriton Physician Health

Serv., No. 97-4554, 1998 WL 254971, at *6 (E.D. Pa. Apr. 20, 1998) (holding a plaintiff whose

EEOC case was dismissed for failure to cooperate was not barred from bringing a Title VII claim

where the EEOC provided a right to sue letter); Wood, 2000 WL 873310, at *5 (concluding

"plaintiff's mere receipt of a right-to-sue notice does not establish administrative exhaustion").

However, while there is some authority relied on by Defendants that would suggest that a

showing of cooperation is necessary to establish a right to sue, in each of these cases the EEOC

actually dismissed the Title VII claim in question for failure to cooperate or for lack of

prosecution.  Mackay, 607 F. Supp. at 274; Wood, 2000 WL 873310, at *1; McLaughlin, 1999

WL 239408, at *2.  In the present action, although failure to cooperate procedures were initiated

at the PHRC in response to Plaintiffs delay in amending their initial complaints, the PHRC never

dismissed Plaintiffs claims for failure to prosecute.  Indeed, Plaintiffs did ultimately file

individual amended complaints in response to the PHRC's request before the dismissal deadline

had passed.  Although Defendant objected to these amended complaints, the PHRC did not

respond to Defendants motion and did not institute failure to cooperate procedures in the three

month period between the date on which Plaintiffs filed their amended complaints and the date

on which Plaintiffs filed their complaint with the Court.  As such, the cases relied on by

Defendants are inapposite, because here there was no finding at the administrative level that the

Plaintiffs failed to adequately pursue their administrative remedies.  Further, as the Court has

already explained, although there is evidence of questionable representation at the administrative

level, the Court cannot conclude, certainly at the summary judgment level, that Plaintiffs

navigated the PHRC proceedings in bad faith.[8]  In sum, Defendants are unable to muster any support for the proposition that, where a claim has not been dismissed for failure to cooperate by the administrative agency and the EEOC has issued a right to sue letter, a plaintiff may still be denied the right to sue for failure to exhaust his administrative remedies in good faith.  Nor are Defendants able to show to the degree necessary at summary judgment that Plaintiffs did not in fact exhaust in good faith.  Therefore, Defendants motion for summary judgment for failure to exhaust administrative remedies as to Plaintiffs' Title VII claim must be denied.

### C.    Timeliness of Plaintiff Rideout's "Failure to Promote" PHRA and Title VII Claims

Defendants next argue that Plaintiff Rideout's failure to promote claim should be dismissed under both the PHRA and Title VII because the alleged violation occurred in or around August 2006, more than 300 days prior to her filing the complaint at the PHRC, violating both Title VII's 300-day limitations period and the PHRA's 180-day limitations period.  Rideout concedes that she discovered Fuller's promotion to the position of Circulation Director more than 180 days prior to the filing of her PHRC complaint and more than 300 days prior to the filing of her administrative complaint.  (Doc. No. 20 at 20.)  She argues, however, that the failure to consider her for promotion is not time-barred because it is just one part of her hostile work environment claim, which is covered by the continuing violations theory.  (Id.)  Rideout's assertion is incorrect.

The continuing violations theory allows a plaintiff to recover for discriminatory actions occurring outside the limitations period when the actions are part of a pattern or practice of

---

[8] See supra note 5; Section III.A.2-3.

ongoing discriminatory conduct that, collectively, constitutes one act of discrimination.  National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' . . . .  It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.").  The continuing violations theory does not apply, however, to discrete discriminatory acts that are individually actionable.  Id. at 122 ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period – 180 or 300 days – set forth in 42 U.S.C. § 2000e-5(e)(1).").  The Third Circuit Court of Appeals has explained that "Morgan established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitations period or they will not support a lawsuit."  O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).  Defendants failure to promote Plaintiff Rideout is a discrete act of discrimination.  O'Connor, 440 F.3d at 127 (quoting Morgan's guidance that "discrete acts" include "failure to promote").  Accordingly, to the extent Plaintiff Rideout alleges failure to promote claims under the PHRA and Title VII, they are time-barred, though this finding does not impact her hostile work environment claims.

### D. Timeliness of Plaintiffs Crider and Hockenberry's PHRA Claims

Defendants next argue that because Plaintiffs Crider and Hockenberry resigned or were constructively discharged prior to the start of 2007, and the PHRA complaint was not filed until July 3, 2007, their hostile work environment claims must be time-barred.  (Doc. No. 15 at 33.)

Defendants contend that, even assuming Plaintiffs Crider and Hockenberry adequately alleged hostile work environment claims, the most recent act of discrimination against them would necessarily be their "constructive discharges," which occurred more than 180 days prior to the filing of their claims with the PHRC.  (Id.)  Plaintiffs concede that the PHRA claims would be time-barred if "individually filed," but argue that Defendants' "sham policy to investigate claims within the workplace" and "intimidat[ion of] witnesses at ms. [sic] Sample's post-employment UC hearing" somehow make their claims timely. (Doc. No. 20 at 21.)

Even assuming the veracity of Plaintiffs' implication that they were personally intimidated when appearing as witnesses at an unemployment compensation hearing, Plaintiffs' hostile work-environment PHRA claims are nonetheless foreclosed by the statute of limitations. To prove a hostile work environment claim, a plaintiff must show, inter alia, that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (internal citations and quotations omitted).  That is, Crider and Hockenberry's hostile work environment claims cannot be based on actions that took place after they were removed from said environment.  Because Crider and Hockenberry resigned their employment before the start of 2007 (Doc. No. 1 ¶¶ 80-81), the Court will grant Defendants' motion to dismiss Plaintiff Crider and Hockenberry's PHRA claims.

###    E.    Retaliation Claims of Rideout, Walters, Hockenberry, Crider, and Mathis Under Title VII and the PHRA

Defendants next urge the Court to dismiss all retaliation claims, with the exception of those raised by Plaintiff Sample, because Plaintiffs have failed to plead facts giving rise to an

18

inference that they can establish their claims because those Plaintiffs failed to allege that they engaged in protected activity. (Doc. No. 15 at 36.) Plaintiffs respond that more discovery is needed, or in the alternative, that they were discriminated against in retaliation for Plaintiff Sample's protected conduct. (Doc. No. 20 at 24.) The Third Circuit Court of Appeals has stated that:

> [T]o advance a prima facie case of retaliation, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action."

Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000); see also Kachmar v. Sunguard Data Systems, Inc., 109 F. 3d 173, 177 (3d Cir. 1997). Pennsylvania courts have generally interpreted the PHRA consistently with Title VII, as such, the result of Defendants' motion will be identical under both Title VII and the PHRA. Nagle v. RMA, 513 F. Supp. 2d 383, 387 (E.D. Pa. 2007) (granting defendants motion to dismiss on, inter alia, plaintiff's retaliation claims raised under both the PHRA and Title VII).

Plaintiffs' argument that they should be permitted to proceed to discovery before the Court rules on the motion to dismiss must fail. As the Supreme Court has explained, our present notice pleading standard "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S. Ct. at 1950. Plaintiffs have failed to allege that they had individually engaged in any protected activity under Title VII. The only averred voiced opposition to the allegedly unlawful actions of Defendants was by Plaintiff Sample. Because this Circuit has expressly rejected a retaliation claim based on third party

conduct, the remaining Plaintiffs cannot assert that they were retaliated against as a result of Plaintiff Sample's activity. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 568 (3d Cir. 2002) (concluding that "the statutes do not make actionable discrimination against an employee who has not engaged in protected activity").

**F.      Individual Liability of Defendants Clausen and Fuller Under Title VII**

Plaintiffs' Title VII claims against individual Defendants Clausen and Fuller must fail. Defendants argue that individual employees cannot be held personally liable under Title VII. (Doc. No. 15 at 37.)  Plaintiffs respond by alleging that "[t]here is a circuit split on this issue which there is not room enough to discuss herein, but the First, Fourth, Eight[h], Tenth[,] and Eleventh Circuits take varying views."  (Doc. No. 20 at 25.)  Left unstated in Plaintiffs' brief is that the Third Circuit has unequivocally held that individual employees are not liable under Title VII.  Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc); see also Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002).  Whatever the state of the law in the other circuits, the law in this circuit is settled.  Employees may not be held individually liable for claims brought under Title VII.

**G.      Age Discrimination and Class Action Status**

Defendants move to dismiss any age discrimination claims and object to class certification.  (Doc. No. 15 at 38-39.)  In response, Plaintiffs assert that do not seek relief for age discrimination, nor do they seek class certification.  (Doc. No. 20 at 25.)  To the extent that the complaint may be construed to raise these issues, Defendants motion to dismiss will be granted.

**V.      CONCLUSION**

The Court denies Defendants motion for summary judgment based on the exhaustion

issue.  The Court grants Defendants motion to dismiss in all other respects.  To that end, only the following claims will remain in this litigation: (1) Plaintiff Rideout's hostile work environment claim under Title VII; (2) Plaintiff Rideout's hostile work environment claim under the PHRA; (3) Plaintiff Sample's claim of gender discrimination under Title VII; (4) Plaintiff Sample's claim of gender discrimination under the PHRA; (5) Plaintiff Sample's hostile work environment claim under Title VII; (6) Plaintiff Sample's hostile work environment claim under the PHRA; (7) Plaintiff Sample's retaliation claim under Title VII; (8) Plaintiff Sample's retaliation claim under the PHRA; (8) Plaintiff Walters' gender discrimination claim under Title VII; (9) Plaintiff Walters' gender discrimination claim under the PHRA; (10) Plaintiff Walters' hostile work environment claim under Title VII; (11) Plaintiff Walters' hostile work environment claim under the PHRA; (12) Plaintiff Mathis' gender discrimination claim under Title VII; (13) Plaintiff Mathis' gender discrimination claim under the PHRA; (14) Plaintiff Mathis' hostile work environment claim under Title VII; (15) Plaintiff Mathis' hostile work environment claim under the PHRA; (16) Plaintiff Hockenberry's gender discrimination claim under Title VII; (17) Plaintiff Hockenberry's hostile work environment claim under Title VII; (18) Plaintiff Crider's gender discrimination claim under Title VII; (19) Plaintiff Crider's hostile work environment claim under Title VII.  Of course, all claims against the Defendants Clausen and Fuller, in their individual capacity, under Title VII are dismissed.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARNELLA M. RIDEOUT, MARY E.  :
SAMPLE, ANGELA B. WALTERS,   :
TYNESA S. MATHIS, CHARMARIE  :
HOCKENBERRY, AND DAWN C.  :
CRIDER,            :
   Plaintiffs       :
             :  Civil Action No. 1:09-cv-0403
  v.          :  (Chief Judge Kane)
             :
PUBLIC OPINION; MEDIANEWS  :
GROUP, INC., d/b/a MEDIA NEWS :
GROUP, TNP PUBLISHING, LLC, THE :
TEXAS-NEW MEXICO NEWSPAPERS :
PARTNERSHIP, RON CLAUSEN, and :
GEORGE FULLER,      :
   Defendants      :

## ORDER

**NOW**, on this 28th day of January 2011, upon consideration of Defendants' amended

motion to dismiss and motion for summary judgment (Doc. No. 14), **IT IS HEREBY**

**ORDERED THAT** Defendants' motion will be **GRANTED** in part and **DENIED** in part as

follows:

1. Defendants' motion for summary judgment on all claims based on Plaintiffs' failure to exhaust administrative remedies under the PHRA is **DENIED**.

2. Defendants' motion for summary judgment on all claims based on Plaintiffs' failure to exhaust administrative remedies under Title VII is **DENIED**.

3. Plaintiffs' claims against Defendants Clausen and Fuller, individually, brought under Title VII are **DISMISSED WITH PREJUDICE**.

4. Plaintiffs' claims of age discrimination under the PHRA and the ADEA are **DISMISSED**.

5. Plaintiffs' claims in the nature of class relief are **DISMISSED**.

6.      Plaintiff Rideout's Title VII and PHRA gender-discrimination claims, arising out of the selection of George Fuller as the Circulation Director, are **DISMISSED WITH PREJUDICE** as untimely.

7.      Claims brought by Plaintiffs Crider and Hockenberry pursuant to the PHRA are **DISMISSED WITH PREJUDICE**, as untimely.

8.      Retaliation claims of Plaintiffs Rideout, Walters, Hockenberry, Crider, and Mathis under both the PHRA and Title VII are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants shall be granted leave to amend their complaint.


 S/ Yvette Kane_____
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania